**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER JOHNSON, | |
| Plaintiff, | Civil Action No. 21-cv-772 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| JOSEPH J. MAGNOLIA, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Christopher Johnson brings this action against his former employer, defendant Joseph J. Magnolia, Inc., alleging that defendant wrongfully terminated him and discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code §§ 2–1401 *et seq*. Am. Compl. ¶¶ 13–31, ECF No. 11. These claims arise from defendant's termination of plaintiff's employment and benefits after a medical diagnosis revealed that plaintiff suffered extensive injuries caused by the conditions of his employment and plaintiff informed defendant that he was disabled. *Id.* ¶¶ 4–12. Defendant has now moved to dismiss the Amended Complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Def.'s Mot. Dismiss ("Def.'s Mot.") at 1–2, ECF No. 12. For the reasons set forth below, defendant's motion is granted.

I.      BACKGROUND

Plaintiff worked at defendant for "years" before suffering severe injuries to his shoulder

and neck.  Am. Compl. ¶¶ 3–4.  He alleges that the injuries were caused by lifting and moving

"heavy items without proper help or tools" during his employment.  *Id.* ¶ 14.  While attempting

to install equipment, plaintiff's hands would go numb for 45 minutes.  *Id.* ¶ 6.  One morning,

plaintiff was unable to grip any objects and proceeded to the emergency room where doctors

performed an X-ray and an MRI.  *Id.* ¶¶ 6–7.  The tests revealed that plaintiff suffered from eight

bulging discs in his spine, nerve damage to his shoulder, and a torn rotator cuff.  *Id.* ¶ 7.  The

doctors informed plaintiff that the injuries resulted from "wear and tear from [his] line of work"

and recommended that plaintiff refrain from returning "to the same conditions that created the

problem."  *Id.* ¶ 8.

Plaintiff alleges that defendant terminated his employment on about October 30, 2020,

after he told defendant that he was "fully disabled."  *Id.* ¶¶ 9, 15.  He claims that he was

pressured to resign or retire but refused.  *Id.* ¶ 9.  According to plaintiff, defendant considered

plaintiff to have abandoned his job and terminated his employment and employer-provided

insurance, *id.* ¶¶ 10, 12, while plaintiff alleges that "his termination was based solely on the fact

that he could not return to work at the time due to his disability created by [d]efendant," *id.* ¶ 16.

Plaintiff asserts he has not been described as "permanently" disabled, *id.* ¶ 11, and that defendant

failed to offer any accommodation before terminating his employment and benefits, *id.* ¶¶ 24, 30.

On March 19, 2021, plaintiff initiated this lawsuit in the Superior Court of the District of

Columbia, under the case name of *Johnson v. Magnolia Companies*, Case NO. 2021 CA 000880

B.  Compl., ECF No. 1-1.  On March 24, 2021, defendant filed a notice of removal from the

Superior Court of the District of Columbia to the United States District Court for the District of

Columbia based on the federal question jurisdiction over the ADA claim in the Complaint.

Notice of Removal, ECF No. 1.  Thereafter, on April 7, 2021, defendant filed a motion to

dismiss the Complaint.  Def.'s Mot. Dismiss, ECF No. 8.

On April 20, 2021, plaintiff filed an amended complaint, adding two new factual

allegations to the wrongful termination claim and repeating the allegations of disability

discrimination.  *See generally* Am. Compl.  Plaintiff brings claims against defendant for

wrongful termination, disability discrimination in violation of the ADA, and disability

discrimination in violation of the DCHRA, *id*. ¶¶ 13–31, seeking actual and compensatory

damages, including loss of income, loss of insurance, medical bills, pain, suffering, humiliation,

and all other damages, in addition to attorneys' fees, statutory pre- and post-judgment interest,

and any other relief the Court deems proper, *id.* at 5. Defendant has refiled a motion to dismiss

reiterating that the Amended Complaint fails to state a claim as a matter of law upon which relief

may be granted.  Def.'s Mot. at 1–2.  This motion is now ripe for resolution.

## II.      LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

"complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff pleads factual content

that is more than "'merely consistent with' a defendant's liability," and "allows the court to draw

the reasonable inference that defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Singletary v.*

*Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019).  Although "detailed factual allegations" are

not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and

conclusions" or a "formulaic recitation of the elements of a cause of action" in order "to provide the 'grounds' of . . . 'entitle[ment] to relief,'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 46–47 (1957)), and "nudge[ ] [the] claims across the line from conceivable to plausible." *Id.* at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (second alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015)).  The Court, however, need not "accept inferences that are unsupported by the facts set out in the complaint." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  Nor must the court accept "legal conclusions cast in the form of factual allegations." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018) (quoting *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009)).

## III.    DISCUSSION

Defendant posits that the Amended Complaint, asserting three claims for wrongful termination and disability discrimination, must be dismissed for failure to state a claim.  *See generally* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 12-1.  The Court agrees. Each claim is addressed *seriatim*.

A.      **Count I: Wrongful Termination**

Plaintiff asserts that defendant wrongfully terminated him and that this claim is cognizable under the public policy exception to the at-will employment doctrine.  Am. Compl. ¶¶ 13–19.

For a wrongful termination claim, plaintiff must allege, as an initial matter, either that he was not an at-will employee or that his termination constituted an exception to the at-will employment doctrine.  *Williams v. Chugach Alaska Corp.*, 210 F. Supp. 3d 25, 30–31 (D.D.C. 2016).  District of Columbia law presumes "that a hiring not accompanied by an expression of a specific term of duration creates an employment relationship terminable at will by either party at any time."  *Id.* at 31 (quoting *Nickens v. Lab. Agency of Metro. Washington*, 600 A.2d 813, 816 (D.C. 1991)).  The doctrine's practical effect is to grant employers tremendous leeway in reaching termination decisions.  "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014) (quoting *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 254 (D.C. Cir. 2008)).  In the Amended Complaint, plaintiff alleges no facts to rebut the presumption of at-will employment, Am. Compl. ¶¶ 3–19, and the doctrine, therefore, applies in this case.  Nonetheless, plaintiff contends that his termination falls within the public policy exception to the at-will employment doctrine.  *Id.* ¶¶ 17–18.

For a wrongful termination claim to fall within the "very narrow" public policy exception to the at-will employment doctrine, the termination of employment must violate "a clear mandate of public policy," which is "officially declared" in a statute, regulation, or the Constitution, and the policy and the conduct at issue must be a "close fit."  *Williams*, 210 F. Supp. 3d at 31 (quoting *Leyden v. Am. Accreditation Healthcare Comm'n*, 83 F. Supp. 3d 241, 248–49 (D.D.C.

2015)).  While other states have adopted more expansive public policy exceptions to the at-will employment doctrine, the District of Columbia permits a discharged at-will employee to sue a former employer for wrongful discharge "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation,'" *id.* (quoting *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C. 1991)), and has expanded the exception "only where the public policy in question is 'solidly' based in a specific statute or regulation or where a constitutional provision 'concretely' applies to the employer's conduct," *Leyden*, 83 F. Supp. 3d at 249 (quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 163 (D.C. 1997) (en banc) (Terry, J., concurring)); *see also Rosella v. Long Rap*, *Inc.*, 121 A.3d 775, 778 (D.C. 2015).

To meet this stringent test for application of the public policy exception, plaintiff alleges that the termination of his employment "frustrated" the public policies of the DCHRA, the ADA, the District of Columbia's Worker's Compensation Act ("WCA"), D.C. Code §§ 32-1501 *et seq.*, and the District of Columbia and Federal Constitutions.  Am. Compl. ¶¶ 17–18.  The allegations in the Amended Complaint fall short of establishing plaintiff's wrongful termination claim both as to plaintiff's reliance on constitutional law and on statutes.  First, plaintiff merely references the District of Columbia and Federal Constitutions without identifying a specific "constitutional provision" and demonstrating how such a provision "concretely" applies to the conduct at issue. *Williams*, 210 F. Supp. 3d at 31 (quoting *Leyden*, 83 F. Supp. 3d at 249).  This is wholly insufficient to meet the pleading standards required for invocation of the public policy exception. *Id.* at 31–32.

Second, plaintiff is foreclosed from seeking remedies under a wrongful termination claim "where the very statute creating the relied-upon public policy already contains a specific and

significant remedy for the party aggrieved by its violation." *Kassem*, 513 F.3d at 254 (quoting

*Nolting v. Nat'l Capital Grp., Inc.,* 621 A.2d 1387, 1390 (D.C. 1993)).  Even if plaintiff's

reliance on the ADA, DCHRA, and WCA for his wrongful termination claim presents "a clear

mandate of public policy," and demonstrates a "close fit" between the policy and the conduct at

issue, he is barred from seeking relief.  "[A]n important limiting principle is that a plaintiff may

not seek relief under a theory of wrongful discharge based upon a statute that carries its own

remedy for violation."  *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C.

2013).  As defendant correctly notes, the ADA, DCHRA, and WCA possess their own source of

remedies and therefore this claim falls outside the purview of the limited public policy exception

permitting wrongful termination claims by at-will employees.  Def.'s Mem. at 1–2, 7; *see also*

*McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) (refusing to create a public

policy exception for claims of discrimination under the DCHRA because the DCHRA already

protects the same public policy); *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 116

(D.D.C. 2012) ("The WCA . . . covers, in pertinent part, an injury to an employee 'that occurs in

the District of Columbia if the employee performed work for the employer, at the time of the

injury' . . . [and] the compensation provided under this law 'shall constitute the employee's

exclusive remedy against the employer . . . .'" (quoting D.C. Code §§ 32-1503(a)(1), 32-

1504(b))).  Otherwise, "any employee who alleges he or she was terminated in violation of

federal or state anti-discrimination laws could also assert a parallel claim for wrongful discharge

. . . directly contrary to the repeated instructions from the DC Court of Appeals that the public

policy exception to the at-will employment doctrine is 'very narrow.'"  Def.'s Mem. at 6.[1]

---

[1]    While the issue of whether the alleged wrongful termination and the public policy advanced in the statutes
plaintiff cites are a "close fit" need not be addressed because the alternative remedies available in those same
statutes foreclose application of the exception, plaintiff may face yet another obstacle in relying on this exception.
"Courts in this Circuit, interpreting the DCCA's decision in *Carl*, have required not only that a plaintiff clearly

Accordingly, plaintiff's wrongful termination claim fails to state a claim and must be dismissed.

### B.        Counts II and III: Disability Discrimination under the ADA and DCHRA

Plaintiff's claims of discrimination under the ADA and DCHRA are predicated on the same factual allegations.  Am. Compl. ¶¶ 20–31.  This Court analyzes employment discrimination claims under the DCHRA using the same legal framework as federal employment discrimination claims.  *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 5 (D.C. Cir. 2010); *see also Chang v. Inst. for Pub.-Private P'ships, Inc.*, 846 A.2d 318, 324 (D.C. 2004) ("Because the DCHRA definition of 'disability' closely resembles the definition of disability found in the [ADA] . . . '[w]e have considered decisions construing the ADA as persuasive in our decisions construing comparable sections of [the] DCHRA.'" (second and third alterations in original) (quoting *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583–84 (D.C. 2001))).

"To demonstrate discrimination in violation of the ADA or the DCHRA, the plaintiff 'must prove [(1)] that he had a disability within the meaning of the ADA, [(2)] that he was "qualified" for the position with or without a reasonable accommodation, and [(3)] that he suffered an adverse employment action because of his disability.'"  *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc)).[2]  Defendant does not dispute the

_____

articulate the applicable public policy, but also show a causal connection between protected activity in which that plaintiff engaged and his or her termination."  *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 126 (D.D.C. 2012) (citing *Robinson v. Securitas Servs., Inc.,* 819 F. Supp. 2d 18, 20–21 (D.D.C. 2011) and *Myers v. Alutiiq Int'l Sols., LLC,* 811 F. Supp. 2d 261, 267–68 (D.D.C. 2011)). The Amended Complaint offers no allegations showing such a causal connection.

[2]        Four types of disability discrimination claims are cognizable under the ADA: "(1) intentional discrimination, otherwise known as disparate treatment; (2) disparate impact; (3) hostile work environment; or (4) failure to accommodate."  *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015) (citing *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 132–33 (D.D.C. 2013)).  Although plaintiff does not specify the

adequacy of plaintiff's allegations that he has a disability within the meaning of the ADA.  Def.'s

Mem. at 9 (accepting plaintiff's allegation "that he is 'fully disabled'" (quoting Am. Compl. ¶¶

8–9)); *see* 42 U.S.C. § 12102(1)(A) (defining "disability" as "a physical or mental impairment

that substantially limits one or more major life activities of such individual").  Indeed, plaintiff's

allegation that he is "fully disabled" and unable to return to work are well-supported by the

Amended Complaint's descriptions of his numb hands, an inability to grip objects due to bulging

discs, nerve damage, and a torn rotator cuff, and the doctor's recommendation against lifting

heavy objects.  Am. Compl. ¶¶ 6–9, 14, 16.

Plaintiff's claims fail on the second prong, however, as the Amended Complaint does not

allege facts demonstrating that plaintiff was a "qualified individual."  The ADA prohibits

employers from discriminating against "a *qualified* individual on the basis of disability."  42

U.S.C. § 12112(a) (emphasis added).  A "qualified individual" is an individual with a disability

"who, with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires."  *Id.* § 12111(8).[3]  The ADA

proscribes the termination of qualified employees because they possess a disability, but

employers may terminate an employee who is unable to complete the essential tasks of their job.

"[T]he ADA does not prohibit an employer from terminating an employee who cannot perform

the essential functions of her position, albeit with a reasonable accommodation."  *McFadden,*

---

type of disability discrimination claim that plaintiff is bringing, the Amended Complaint can be read reasonably as seeking to state a claim under theories of intentional discrimination, *see* Am. Compl. ¶¶ 23, 29 (alleging that "[p]laintiff['s] termination was based solely on the fact that he could not return to work at that time due to his disability"), and failure to accommodate, *see id.* ¶¶ 24, 30 (alleging that "[d]efendant filed [sic] to offer any determination of accommodation before [plaintiff's] termination").

[3]     To determine whether a person is "qualified" for a position, under the analysis required by the ADA, "an employer needs information about the nature of the individual's disability and the desired accommodation— information typically possessed only by the individual or her physician."  *Perry-Anderson v. Howard Univ. Hosp.*, 192 F. Supp. 3d 136, 145 (D.D.C. 2016) (quoting *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)).  "Thus, 'an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.'"  *Id.* (quoting *Ward*, 762 F.3d at 31–32).

611 F.3d at 4; *see Baron v. Dulinski*, 928 F. Supp. 2d 38, 42 (D.D.C. 2013) (dismissing a plaintiff's disability discrimination claim under Rule 12(b)(6) when the plaintiff alleged that she was "totally disabled" because "'[a] totally disabled person who cannot perform the essential functions of the employment position with or without reasonable accommodation . . . cannot be a qualified individual entitled to sue under Title I of the [ADA]'" (quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000))).

The Amended Complaint does not allege any facts demonstrating that plaintiff possessed the ability to perform the essential functions of his position, even if given a reasonable accommodation and, consequently, fails to allege sufficiently that he was a "qualified individual." Instead, as defendant stresses, the Amended Complaint describes plaintiff as "fully disabled" and unable to "return to work at that time due to his disability." Def.'s Mem. at 9 (quoting Am. Compl. ¶¶ 9, 23, 29). Plaintiff emphasizes that his disability, and corresponding inability to perform the duties of his position, was the very reason his employment was terminated, alleging that the termination "was based solely on the fact that he could not return to work at that time." Am. Compl. ¶¶ 23, 29. Absent any allegations that he could have performed his job with or without reasonable accommodations, the termination of plaintiff's employment was permissible under the ADA. *McFadden*, 611 F.3d at 4.

Plaintiff's addition in the Amended Complaint of the allegation that "Defendant [sic] has not, at this point, been described as permanently. [sic]" disabled, Am. Compl. ¶ 11, conflicts with his other allegation describing himself as "fully disabled," *id*. ¶ 9, and is irrelevant to the determination of whether he was a "qualified individual" under the ADA. [4] The added

---

[4]     The Amended Complaint does not state how much time elapsed between plaintiff's onset of symptoms, tests, diagnosis, communication with defendant, and termination of employment, but plaintiff indicates that defendant "waited not 6 months then told [plaintiff] he had to go because he was disabled." Pl.'s Mem. Supp. Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Mem.") at 4, ECF No. 13.

allegation, even if taken as true, does not allege sufficiently that plaintiff could perform or was imminently capable of performing the essential functions of his position with reasonable accommodations.  *See Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 310–11 (D.D.C. 2015) (finding that a plaintiff "was incapable of performing the essential functions of his . . . position" because the facts, as alleged, "ma[de] plain that he was 'physically incapable' of performing his . . . duties and that his injuries prevented his return" to work); *Shapiro v. Howard Univ.*, No. 18-cv-2588 (TSC), 2019 WL 4860876, at *17 (D.D.C. Sept. 30, 2019) ("Missing from Plaintiff's submissions are critical factual allegations from which the court might infer that Plaintiff could perform the essential functions of her position with reasonable accommodation. Absent such allegations, the court cannot find that Plaintiff is a qualified individual for ADA purposes.").  As defendant correctly states, "[w]hen an employee tells his employer that he is 'fully disabled' and 'could not return to work at that time due to his disability,' the law is clear that the employer is under no obligation to keep the job open or to continue paying benefits." Def.'s Mem. at 9.  Simply put, the Amended Complaint fails to state a claim upon which relief may be granted under the ADA or DCHRA.

IV.     **CONCLUSION**

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, and, accordingly, defendant's motion to dismiss, ECF No. 12, is granted.  An order consistent with this Memorandum Opinion will be issued contemporaneously.

Dated: November 16, 2021

_____
BERYL A. HOWELL
Chief Judge